FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

WILBERT WILLIAMS, M.D.,          )
                                 )
             Plaintiff,          )
                                 )
        v.                       )      Civil No. 2005-97
                                 )
GOVERNMENT OF THE VIRGIN         )
ISLANDS, BOARD OF MEDICAL        )
EXAMINERS: THELMA R. WATSON,     )
FRANK A. ODLUM, and JOSEPH       )
DeJAMES,                         )
                                 )
             Defendants.         )
_____)

ATTORNEYS:

Joel H. Holt, Esq.
St. Croix, U.S.V.I.
      For the plaintiff.

Aquannette Y. Chinnery-Montell, Esq.
Tamika Archer, Esq.
Terrlyn Smock, Esq.
Carol Thomas-Jacobs, Esq.
St. Thomas, U.S.V.I.
      For the defendants.

MEMORANDUM OPINION

GÓMEZ, C.J.

     In this matter, the Court must determine whether to abstain
in accordance with the doctrine articulated by the Supreme Court
in *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*").

I. FACTUAL AND PROCEDURAL BACKGROUND

     The plaintiff, Wilbert Williams ("Williams"), has been a
family medical doctor on St. Croix, U.S. Virgin Islands since

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 2

1983.

On April 15, 2005, Williams treated Lydia Ventura for general body aches and weakness.  Several days after seeing Williams, Ventura died.

On May 31, 2005, defendant the Virgin Islands Board of Medical Examiners (the "Board") sent Williams a notice.  The notice recounted the Board's receipt of a letter of concern regarding Williams' treatment of Ventura.  The notice also requested Williams' appearance at a show-cause hearing before the Board on June 9, 2005.  On June 17, 2005, the Board suspended Williams' medical license for one year.[1]

Thereafter, Williams commenced this action against the Board and three of its members (together, the "Defendants"), alleging that the proceedings against him were procedurally inadequate.  Counts One and Two of the complaint assert due process violations.  Count Three seeks a declaration that the Defendants must adopt reasonable rules and regulations in accordance with Virgin Islands law.  Count Four alleges an illegal monopoly in restraint of trade or commerce.  Count Five requests a temporary restraining order ("TRO") and injunctive relief.

---

[1]  In its decision, the Board found that Williams had acted negligently by, among other things, administering inappropriate medication to Ventura and afterward destroying all traces of that medication.  The Board imposed several conditions precedent to the reinstatement of Williams' license.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 3

On July 12, 2005, the Court granted Williams' motion for a TRO and enjoined the Board from enforcing its suspension of Williams' license.  The Court also scheduled a hearing on Williams' motion for a preliminary injunction for August 5, 2005.

On July 14, 2005, two days after the Court issued the TRO, the Board sent Williams another notice, indicating that it was initiating new disciplinary proceedings.  Thereafter, the Board held another hearing, after which it revoked Williams' medical license for life.

Williams then applied for another TRO.  The Court granted that application.  The Court issued another TRO on March 10, 2006, enjoining the Board from enforcing its revocation of Williams' license.  The Court also noted that the TRO would expire within ten days, as per Rule 65(b) of the Federal Rules of Civil Procedure.[2]  On March 24, 2006, the Court extended the TRO for another ten days.  At a subsequent hearing on March 30, 2006, the parties stipulated on the record to an extension of the TRO until further order of the Court.  The Court approved the parties' stipulation.[3]

---

[2]  Fed. R. Civ. P. 65(b)(2) provides, in part, that a TRO "expires at the time after entry -- not to exceed 10 days -- that the court sets[.]"

[3]  TROs that are extended by stipulation of the parties become, in effect, preliminary injunctions. *See United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1397 (6th Cir. 1991).

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 4

The Court thereafter scheduled an evidentiary hearing for April 20, 2007 to determine whether *Younger* mandates dismissal of this matter.  On the Defendants' motion, the hearing was continued to June 14, 2007.  During the testimony of the first witness, the district judge initially assigned to this case called a recess and subsequently recused himself.  The case was reassigned to the undersigned.

On November 17, 2008, the Court held an evidentiary hearing to determine whether *Younger* requires the Court to abstain and, if so, whether any exception to *Younger* applies.[4]  The parties have filed pre-hearing and post-hearing briefs.

## II. <u>DISCUSSION</u>

"Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue." *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission*, 791 F.2d 1111, 1114 (3d Cir. 1986) (citation omitted).  "The doctrine is rooted in concerns for the maintenance of the federal system and represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Hi*

---

[4]  Four witnesses testified on behalf of Williams: defendants Thelma R. Watson and Frank A. Odlum; Williams himself; and Williams' wife and longtime office manager, Iris Milagros Williams.  No witnesses testified on behalf of the Defendants.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 5

*Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303 (3d Cir. 2004)
(quotation marks and citations omitted).  "Consequently,
abstention is justified 'only in the exceptional circumstances
where the order to the parties to repair to the State court would
clearly serve an important countervailing interest.'" *Id.*
(quoting *Colorado River Water Conservation Dist. v. United
States*, 424 U.S. 800, 817 (1976)).  "In other words, 'abstention
from the exercise of federal jurisdiction is appropriate only
under certain limited circumstances.'" *Id.* (quoting *Chez Sez III
Corp. v. Township of Union*, 945 F.2d 628, 630 (3d Cir. 1991)).
"Those circumstances 'are loosely gathered under discrete
concepts of abstention named after leading Supreme Court
Cases[.]'" (citation omitted).  One such case is *Younger v.
Harris*, 401 U.S. 37 (1971).

In *Younger*, the Supreme Court held that, absent
extraordinary circumstances, federal courts must abstain from
interfering with pending state criminal prosecutions.  The Court
based its decision on "the longstanding public policy against
federal court interference with state court proceedings." 401
U.S. at 43.  While *Younger* involved a state criminal prosecution,
"the national policy against enjoining pending state court
proceedings has since been extended to noncriminal judicial
proceedings." *Zahl v. Harper*, 282 F.3d 204, 208 (3d Cir. 2002).

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 6

The Supreme Court has explained the rationale animating *Younger* abstention:

> The notion of "comity" includes a proper respect for
> state functions, a recognition of the fact that the
> entire country is made up of a Union of separate state
> governments, and a continuance of the belief that the
> National Government will fare best if the States and
> their institutions are left free to perform their
> separate functions in their separate ways.  Minimal
> respect for the state processes, of course, precludes
> any presumption that the state courts will not
> safeguard federal constitutional rights.

*Middlesex County Ethics Committee v. Garden State Bar
Association*, 457 U.S. 423, 431 (1982) (quotation marks and
citations omitted).

Abstention is appropriate under *Younger* where "(1) there are
ongoing state proceedings that are judicial in nature; (2) the
state proceedings implicate important state interests; and (3)
the state proceedings afford an adequate opportunity to raise the
federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir.
1989); *see also Middlesex*, 457 U.S. at 432; *Kentucky West
Virginia Gas Co. v. Pennsylvania PUC*, 791 F.2d 1111, 1116 (3d
Cir. 1986).

Even if the *Younger* test is met, however, abstention is not
appropriate in all circumstances.  A federal court may interfere
with a state proceeding if any one of four exceptions is met: (1)
irreparable injury is both great and immediate; (2) the state law
is flagrantly and patently violative of express constitutional
prohibitions; (3) there is a showing of bad faith or harassment;

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 7

or (4) other unusual circumstances call for equitable relief. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citing *Younger*, 401 U.S. at 46-54).

### III. <u>ANALYSIS</u>

The first *Younger* factor asks whether the Board's proceedings are ongoing and judicial in nature.  This factor is really a two-step inquiry.

In a technical sense, the Board's proceedings are not "ongoing" because the Board has already rendered a final decision regarding Williams' license.  However, "for *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989).  Thus, a state proceeding is "ongoing"

> where a coercive administrative proceeding has been
> initiated by the State in a state forum, where adequate
> state-court judicial review of the administrative
> determination is available to the federal claimants,
> and where the claimants have chosen not to pursue their
> state-court judicial remedies, but have instead sought
> to invalidate the State's judgment by filing a federal
> action.

*O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 (3d Cir. 1994).

Williams has not sought a writ of review of, or otherwise challenged, the Board's decision. *See* V.I. CODE ANN. tit. 5, § 1421 (describing the procedure for seeking a writ of review).  As

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 8

a consequence, the Board's proceedings against Williams are

ongoing within the meaning of *Younger*. *See*, *e.g.*, *Zahl*, 282 F.3d

at 209 (finding a proceeding ongoing because the plaintiff "has

the right to appellate review by state courts if he wishes to

challenge the final decision of the [state disciplinary board]");

*O'Neill*, 32 F.3d at 793 (holding that the first *Younger* prong was

met where a state administrative proceeding was "was a judicial

proceeding which may be deemed 'pending' as a result of [the

appellants'] failure to take advantage of the [state] appellate

remedies which were available to them").[5]

---

[5]   In *O'Neill v. City of Philadelphia*, the plaintiffs
received several parking tickets during the late 1980s and the
early 1990s but did not pay their fines.  Instead, they
challenged their tickets before a municipal adjudicative body.
On August 30, 1991, that body rejected the plaintiffs' objections
to the tickets.  On October 30, 1991, the plaintiffs sued in
federal court, alleging that their constitutional and state-law
rights were violated by the administrative body's actions.  On
March 29, 1993, the district court found that the plaintiffs' due
process rights had been violated.  The City of Philadelphia
appealed.  The United States Court of Appeals for the Third
Circuit found that the district court should have abstained.
With respect to the second *Younger* factor, the court noted the
plaintiffs had failed to seek state-court judicial review of the
administrative body's order, opting instead to sue in federal
court.  To determine whether the state proceedings were
nevertheless ongoing, the court framed the question as follows:
"whether a state proceeding is 'pending,' and *Younger* abstention
proper, where the adjudicatory process has become final as a
result of the federal claimant's failure to pursue state-court
judicial review of an unfavorable state administrative
determination?" 32 F.3d at 790 (citation omitted).  The court
answered that question affirmatively, reasoning that "[w]e have
been given no reason why a litigant in a state administrative
proceeding should be permitted to forego state-court judicial
review of the agency's decision in order to apply for relief in

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 9

While there are no bright-line rules for determining the second step of the first *Younger* factor, whether a proceeding is

federal court." *Id.* at 790-91.  The Third Circuit's main ground for so deciding was "considerations of comity[.]" *Id.* at 793.

In *O'Neill*, the dissent noted that by the time the plaintiffs had filed their federal suit, "the state administrative process was over[,] . . . and any effort the plaintiffs might have made to return there to revive and pursue their administrative proceedings would have been rejected as time-barred." *Id.* at 796 (Lewis, J., dissenting).  The dissent further noted that the effect of the majority's ruling was that plaintiffs who allege that a state administrative body has violated their constitutional rights, "cannot pursue a § 1983 claim in federal court -- even after the administrative process is no longer pending, and even when they no longer have any recourse within the state system." *Id.* at 802 (footnoted omitted).

The situation described by the dissent in *O'Neill* is precisely the one presented in this matter.  It may well be that Williams no longer has any remedy in the Virgin Islands courts. *See* Super. Ct. R. 15(a) (requiring that a petition for a writ of review be filed within thirty days of the challenged decision). As in *O'Neill*, the potential unavailability of such review, however, is the fruit of Williams' own choice not to pursue his constitutional claims in the Superior Court.  Indeed, Williams did file suit in that court, only to voluntarily dismiss it later in favor of his suit before this Court.  Under the *O'Neill* majority's reasoning -- which this Court is bound to follow -- the potential unavailability of such review on statute-of-limitations grounds does not inform the Court's abstention inquiry.  That reasoning has been described as the "majority view" among the federal courts of appeals. *See Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 35 (1st Cir. 2004).

Recognizing the possibly harsh result of the application of *O'Neill*, this Court notes that Williams is not necessarily without any form of relief.  Although a writ of review action may be time-barred, he may well be able to raise his allegations of constitutional injury in the Superior Court by way of a regular civil action. *See* V.I. CODE ANN. tit. 5, § 31(2)(A) (imposing a ten-year limitations period on "[a]n action for any cause not otherwise provided for in this section").

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 10

judicial in nature depends not on the form of the proceeding but on its nature and effect. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 481 (1983). A proceeding is judicial in nature if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *See Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908). The fact that a proceeding is not presided over by a judicial officer or that a full range of due process rights is not afforded is not dispositive. *Feldman*, 460 U.S. at 476-79. Courts have found proceedings to be judicial in nature where they "provide the type of procedural safeguards found in formal court proceedings," *Alleghany Corp. v. Haase*, 708 F. Supp. 1507, 1528-29 (W.D. Wis. 1988), or have "trial-like trappings," *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (1st Cir. 1989).

The Board's proceedings are clearly judicial in nature because they are coercive territorial enforcement proceedings.[6]

---

[6] Furthermore, the Board's enabling legislation sets forth rules and procedures governing proceedings before it. Those procedures bear "trial-like trappings." Virgin Islands law provides, in relevant part:

The procedural provisions must provide for investigation of charges by the Board; notice of charges to the accused; an opportunity for a fair and impartial hearing for the accused before the Board; an opportunity for representation of the accused by counsel; the presentation of testimony, evidence and argument; subpoena power and attendance of witnesses; a

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 11

Those proceedings are precisely the type that have been considered judicial in nature for *Younger* purposes. *See*, *e.g.*, *Zahl*, 282 F.3d at 209; *see also Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002); *Majors v. Engelbrecht*, 149 F.3d 709, 712 (7th Cir. 1998). Because the Board's proceedings are ongoing and judicial in nature, the first *Younger* factor is met.

The second *Younger* factor is likewise satisfied. The very conduct of the Board in the wake of the complaint regarding Ventura's death, indicates the significant interest the Board has in regulating the practice of medicine with an eye toward improving public health. Without dwelling on the issue, the Court has little doubt that the Virgin Islands has an overriding interest in the regulation of its medical professionals. *See*, *e.g.*, *Zahl*, 282 F.3d at 209 (affirming the district court's decision to abstain and agreeing with the district court's determination that "important to the public as a whole is regulation of the practice of medicine") (quotation marks omitted); *Doe v. Conn., Dep't of Health Servs.*, 75 F.3d 81, 85 (2d Cir. 1996) (stating that "Connecticut's legislative scheme for disciplining doctors serves important and obvious public

---

record of proceedings; and judicial review by the courts in accordance with the standards established by the jurisdiction for such review.

V.I. CODE. ANN. tit. 27, § 9(b).

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 12

health objectives."); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 778 (1st Cir. 1990) (holding that the enforcement of appropriate medical licensing standards "obviously implicates important state interests").

The third *Younger* factor asks whether Williams has an adequate opportunity to raise his constitutional claims in the territorial forum.  This factor "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." *O'Neill*, 32 F.3d at 792 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986); *Middlesex*, 401 U.S. at 436)). "Moreover, 'when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

Williams has not challenged the Board's actions in the Superior Court.  The availability of an adequate territorial forum to review the Board's decision satisfies the third *Younger* prong. *See*, *e.g.*, *Zahl*, 282 F.3d at 210 (finding the third *Younger* factor met because the plaintiff could "assert his federal preemption claim in the state administrative proceeding"

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 13

and "appeal to the Appellate Division of the Superior Court of
New Jersey, . . . which is capable of reviewing [the plaintiff's]
federal claims"); *O'Neill*, 32 F.3d at 792-93 ("In the present
case, [neither of the appellants] attempted to raise his federal
claims in the state proceedings.  Accordingly, we would be
well-justified in assuming that, had they done so, they would
have been afforded an adequate remedy.").

     Because the Court finds that the three *Younger* factors are
met, the Court next considers Williams' contention that the
circumstances of the Board's proceedings implicate any one of
several *Younger* exceptions.  Specifically, Williams argues that
the Board's bad faith as well as extraordinary circumstances
require this Court's consideration.[7]

     First, Williams asserts that the Board, after having been
temporarily restrained on July 12, 2005 from enforcing its
suspension decision, issued a new notice to him on July 14, 2005
and subsequently revoked his license for life.  In its revocation
order, the Board found, among other things, that Williams had (1)

_____

          [7]  At a previous hearing in this matter, Williams also
appeared to claim that he would suffer irreparable injury absent
this Court's review.  The irreparable injury exception may be
collapsed into the third exception.  *See Collins v. County of
Kendall*, 807 F.2d 95, 98 (7th Cir. 1986) ("A showing of a bad
faith . . . is equivalent to a showing of irreparable injury for
purposes of the comity restraints defined in *Younger*.")
(alteration omitted) (quoting *Wilson v. Thompson*, 593 F.2d 1375,
1382 (5th Cir. 1979)).

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 14

lied by stating that he was ACLS-certified[8]; (2) violated Drug
Enforcement Administration regulations; and (3) did not have a
valid medical license at the time he treated Ventura.  Williams
contends that the Board knew these findings to be untrue.

Second, Williams asserts that the Board's bad faith is
evidenced by the Board's imposition of the dramatically more
onerous sanction of revocation for life from the practice of
medicine after its second hearing.  Williams further asserts that
the Board, in imposing that sanction, relied on substantially the
same evidence it had used in suspending Williams' license for one
year.

"A plaintiff asserting [a] bad faith [proceeding] as an
exception to *Younger* abstention must allege specific facts to
support an inference of bad faith." *Collins*, 807 F.2d at 98.
"The *Younger* rule . . . requires more than a mere allegation and
more than a 'conclusory' finding to bring a case within the
harassment exception." *Grandco Corp. v. Rochford*, 536 F.2d 197,
203 (7th Cir. 1976).  "This specific evidence must show that
[the] state [proceeding] 'was brought in bad faith for the
purpose of retaliating for or deterring the exercise of
constitutionally protected rights.'" *Collins*, 807 F.2d at 98
(quoting *Wilson*, 593 F.2d at 1383).  The plaintiff thus bears a
heavy burden in making out a case of bad faith or harassment.

---

[8]  ACLS is the acronym for Advanced Cardiac Life Support.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 15

*Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (citation omitted).  "[T]he subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) (citations omitted).  "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution –– even when the violations of constitutional rights are egregious –– will not warrant the application of the bad faith exception." *Id.* (citation omitted).  Bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975).

In *Williams v. Red Bank Bd. of Educ.*, 662 F.2d 1008 (3d Cir. 1981), the United States Court of Appeals for the Third Circuit illustrated the stringency of the bad faith exception.  In that case, the plaintiff was a tenured school teacher whose dismissal was sought by the local board of education after the teacher made statements criticizing the board.  While the dismissal proceeding was pending, the teacher sued in federal district court, alleging that "the filing of the administrative charges against her had violated her rights under the first and fourteenth amendments." *Id.* at 1011.  The Third Circuit agreed with the district court that *Younger*'s bad faith exception did not apply:

> [The teacher] has also argued that this case falls
> within the "bad faith" exception to *Younger* abstention,

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 16

> claiming that "(governmental) actions in retaliation
> for exercise of First Amendment rights necessarily
> involve bad faith and harassment."  This argument rests
> on an erroneous reading of an exception to *Younger*.
> For the district court to find "bad faith," [the
> teacher] would have had to allege something akin to a
> *series of prosecutions brought in bad faith "with(out)*
> *any expectation of securing a valid conviction;"* or a
> prosecution brought under a statute "flagrantly and
> patently violative of express constitutional
> prohibitions in every clause, sentence and paragraph,
> and in whatever manner and against whomever an effort
> might be made to apply it."  [The teacher's] complaint
> makes no such allegations, as the district court
> pointed out, and accordingly we find no error in the
> district court's rejection of her argument.

*Id.* at 1022 n.14 (emphasis supplied; citations omitted).

Here, Williams has not even alleged, much less adduced any

quantum of evidence, that he has ever before been pursued by the

Board in his approximately two-and-one-half decades of practicing

medicine in the Virgin Islands.  Nor has Williams provided any

evidence tending to show that the Board's actions were fueled by

nefarious motives.  Instead, Williams merely contends that "he is

the only doctor in the . . . Virgin Islands to have been

subjected to a licensing requirement that did not apply to any

other doctor at the time of the 2005 hearing." (Pl.'s Abstention

Br. 10.)  That contention, even if accepted as true, is

unsubstantiated by evidence that the Board knew of other doctors'

similar alleged wrongdoing and did not pursue those doctors as it

did Williams.[9] *See*, *e.g.*, *Pincham v. Illinois Judicial Inquiry*

---

[9]  Testimony at the November 17, 2008, hearing indicated
that no other Virgin Islands medical doctor has been disciplined

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 17

*Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989) ("Even if we accept

Justice Pincham's allegation that other judges engaged in

activity equivalent to his and were not disciplined, we refuse to

conclude that there was 'bad faith' absent allegations that the

state agencies had some awareness of the other judges' activities

and treated them more favorably than Justice Pincham . . . .");

*see also United States v. Smith*, 231 F.3d 800, 810 (11th Cir.

2000).

Because Williams has failed to allege specific facts,

supported by competent evidence, demonstrating that the Board

singled him out for disciplinary proceedings or sought to

---

by the Board as a result of the death of a patient.  However,
that same testimony also indicated that Williams' case is among
the only in which the Board has been affirmatively notified of
such a death via a letter of complaint.  (One other doctor who
was the subject of such a letter elected not to defend himself
before the Board).  The fact that the Board has not investigated
other doctors whose patients have died while in their care is
consistent with Virgin Islands law governing the functioning of
the Board. *See* V.I. Code Ann. tit. 27, § 3(d)(9) ("The Board . .
. shall have, at a minimum, the following powers and
responsibilities: . . . *Receive, review and investigate
complaints* against practitioners for whose licensure they are
responsible . . . .") (emphasis supplied).

Williams also presented testimony that the Board did not
specifically investigate any of the emergency medical technicians
or other doctors at the hospital who cared for Ventura
immediately before her death.  To the extent Williams relies on
that testimony to show that he was singled out for disciplinary
action, that reliance is misplaced.  That testimony also reflects
that the Board took evidence from everyone involved in Ventura's
medical treatment and carefully considered everyone's role on an
individual basis.  What Williams characterizes as singling out is
really an expression of his disagreement with the Board's
conclusion about his particular role in Ventura's death.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 18

retaliate against him, Williams has fallen short of his burden of

establishing the Board's bad faith. *See*, *e.g.*, *Diamond "D"*

*Constr. Corp.*, 282 F.3d at 200 (finding the bad faith exception

inapplicable where there was no evidence that either the

investigation was "driven by a retaliatory motive or by some

other nefarious purpose" or that the plaintiff had been "singled

. . . out for adverse treatment"); *Schlagler v. Phillips*, 166

F.3d 439, 443-44 (2d Cir. 1999) (holding that because the

prosecution was not animated by a retaliatory motive and was

merely "a straightforward enforcement of the laws of New York,

[the] case does not fall within the bad faith exception[.]").

Williams also contends that abstention is unwarranted

because of the extraordinary circumstances of this case.

In *Kugler v. Helfant*, 421 U.S. 117 (1975), the Supreme Court

fleshed out the extraordinary circumstances exception:

> Only if 'extraordinary circumstances' render the state
> court incapable of fairly and fully adjudicating the
> federal issues before it, can there be any relaxation
> of the deference to be accorded to the state criminal
> process.  The very nature of 'extraordinary
> circumstances,' of course, makes it impossible to
> anticipate and define every situation that might create
> a sufficient threat of such great, immediate, and
> irreparable injury as to warrant intervention in state
> criminal proceedings.  But whatever else is required,
> such circumstances must be 'extraordinary' in the sense
> of creating an extraordinarily pressing need for
> immediate federal equitable relief, not merely in the
> sense of presenting a highly unusual factual situation.

*Id.* at 124.  "While *Kugler* spoke in the context of criminal

prosecutions, the same standard applies in the civil context."

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 19

*Diamond "D"*, 282 F.3d at 201 (citing *Moore v. Sims*, 442 U.S. 415,

433 (1979)).  The Supreme Court has found extraordinary

circumstances to exist on only two occasions: (1) "when a state

statute is flagrantly and patently violative of express

constitutional prohibitions in every clause, sentence and

paragraph, and in whatever manner and against whomever an effort

might be made to apply it"; and (2) "when the state

administrative agency was incompetent by reason of bias to

adjudicate the issues pending before it[.]" *Id.* (quotation marks

and citations omitted).

  Williams does not invoke the first example of an exceptional

circumstance articulated in *Kugler*.  Instead, Williams claims

that the Board is biased against him.[10]

  "Bias exists where a court has prejudged, or reasonably

appears to have prejudged, an issue." *Kenneally v. Lungren*, 967

F.2d 329, 333 (9th Cir. 1992) (quotation marks and citation

omitted).  "[T]he baseline showing of bias necessary to trigger

*Younger*'s escape mechanism requires the plaintiff to offer some

_____

[10]  In fact, Williams collapses his bias argument into the
bad faith exception.  Courts, however, generally fold bias into
the extraordinary circumstance exception. *See Kugler*, 421 U.S.
(recognizing bias as an example of the "exceptional
circumstances" warranting federal intervention); *Esso Std. Oil
Co. v. Lopez-Freytes*, 522 F.3d 136, 143 (1st Cir. 2008) ("Among
those extraordinary circumstances are cases in which extreme bias
completely renders a state adjudicator incompetent and inflicts
irreparable harm upon the petitioner.").  In accordance with
these decisions, this Court adopts a similar approach.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 20

evidence that abstention will jeopardize his due process right to an impartial adjudication." *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 640 (1st Cir. 1996) (citations omitted). "To implicate due process, claims of general institutional bias must be harnessed to a further showing, such as a potential conflict of interest, or a pecuniary stake in the outcome of the litigation[.]" *Id.* (internal citations omitted). Furthermore, a litigant alleging bias

> must overcome a presumption of honesty and integrity in those serving as adjudicators; and [he] must convince [the court] that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

In support of his bias claim, Williams contends that he is in direct competition with Michelle Dizon ("Dizon"), another St. Croix medical doctor and a member of the Board during the disciplinary proceedings against him. Williams argues that the Board overlooked or ignored that conflict and improperly permitted Dizon to participate in those proceedings. Williams relies on the Supreme Court's decision in *Gibson v. Berryhill*, 411 U.S. 564 (1973).

In *Gibson*, the Alabama Optometric Association (the "AOA") filed charges against various optometrists with the Alabama Board

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 21

of Optometry (the "ABO"), the statutory body with authority to
issue, suspend, and revoke licenses for the practice of
optometry.  The AOA alleged that the optometrists had engaged in
unprofessional conduct, as defined by Alabama statute, and
therefore were practicing their profession unlawfully.  The AOA
noticed a hearing on the allegations.  Before the hearing date,
the optometrists sued the ABO and the AOA in federal district
court, alleging 42 U.S.C. § 1983 violations and seeking
injunctive relief on the ground that the statutory scheme
regulating the practice of optometry was unconstitutional.  At
bottom, the optometrists alleged that the Board was biased.

A three-judge district court panel held that *Younger*
abstention was inappropriate because "the administrative process
was so defective and inadequate as to deprive the plaintiffs of
due process of law." *Gibson*, 411 U.S. at 570.  Specifically, the
district court first found that the ABO, "which acts as both
prosecutor and judge in delicensing proceedings, had previously
brought suit against the plaintiffs on virtually identical
charges in the state courts." *Id.* at 571.  Second, the district
court found that ABO members would receive a windfall in business
if the plaintiff optometrists were delicensed.  In other words,
the district court found that the ABO members' personal financial
stake disfavored abstention.  Finally, the district court
regarded the ABO "as a suspect adjudicative body . . ., because

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 22

only members of the [AOA] could be members of the [ABO], and
because the [AOA] excluded from membership optometrists such as
the plaintiffs who were employed by other persons or entities."
*Id.*  Thus, in the district court's view, "to require the
Plaintiffs to resort to the protection offered by state law in
these cases would effectively deprive them of their property,
that is, their right to practice their professions, without due
process of law and that irreparable injury would follow in the
normal course of events." *Id.* (citation omitted).

     The Supreme Court affirmed, agreeing with the district court
that the ABO "was incompetent by reason of bias to adjudicate the
issues pending before it." *Id.* at 577.  The Court based its
decision on the ABO members' personal financial stake, reasoning
that "those with substantial pecuniary interest in legal
proceedings should not adjudicate these disputes" and noting as
well that "most of the law concerning disqualification because of
interest applies with equal force to . . . administrative
adjudicators." *Id.* at 579 (alteration in original; quotation
marks and citations omitted).

     The *Gibson* Court rooted its conclusion of unconstitutional
bias in its finding that the ABO members all had a "substantial
pecuniary interest" in the outcome of proceedings in which they
served as adjudicators. 411 U.S. at 579.  In contrast, Williams
has presented little, if any, persuasive evidence that Dizon and

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 23

he are in competition with each other or that Dizon has even a
slight pecuniary interest in the outcome of the Board's
proceedings against Williams.  Williams' reliance on *Gibson* is
therefore unavailing.[11] *See*, *e.g.*, *Hammond v. Baldwin*, 866 F.2d
172, 177 (6th Cir. 1989) (holding that because the plaintiffs
"have alleged no personal pecuniary interest on the part of any
particular officials who were to preside over their claims . . .,
*Gibson* simply is inapposite").

In addition to his claim of bias, Williams characterizes his
inability to practice medicine as another exceptional
circumstance triggering the need for federal intervention.
Williams does not allege that he has been precluded from
practicing medicine or from seeing patients.  Rather, Williams
has presented evidence that he cannot submit insurance claims for
reimbursement, resulting in a loss of income.

In *Diamond "D" Constr. Corp. v. McGowan*, the Second Circuit
declined to answer the question whether the threat to the
viability of the plaintiff's business could constitute an
extraordinary circumstance under *Younger*. *See Diamond "D"*, 282

---

[11]  Williams is a family medicine practitioner while Dizon
is an endocrinologist.  Williams testified that endocrinology
constitutes approximately eighty percent of his business.
Williams included his treatment of diabetes in arriving at that
figure.  Neither Williams nor the Defendants called Dizon as a
witness.  Significantly, Williams' testimony on this point does
not establish the sort of direct pecuniary interest that *Gibson*
requires.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 24

F.3d at 201-02.  Instead, the court observed that the plaintiff's argument that its business would suffer injury because of the sluggishness of the state proceeding was severely undercut by the plaintiff's election not to file a mandamus proceeding in state court to compel the state administrative body to provide expeditious review. *See id.* at 202.  The court reiterated that "where such state remedies are available, 'a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Pennzoil*, 481 U.S. at 15).

Here, like the plaintiff in *Diamond "D"*, Williams has offered no reason why he has not challenged the Board's actions in the local courts.  His failure to do so undermines his argument that this matter manifests an "extraordinarily pressing need," *Kugler*, 421 U.S. at 124, for this Court's immediate review.

To the extent Williams premises his exceptional circumstances argument on the Board proceedings' supposed lack of procedural safeguards, he still falls outside the broad definition of exceptional circumstances articulated in *Kugler*. Williams' mere assertion that the Board's proceedings are arbitrary and capricious, and consequently deprived him of due process, does not suffice on its own to warrant federal intervention. *See, e.g., Gray v. Pagano*, No. 07-3433, 2008 U.S.

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 25

App. LEXIS 16235 (3d Cir. July 23, 2008) (not precedential)

(noting that "[t]he Constitution does not guarantee that the

decision of state courts shall be free from error, or require

that pronouncements shall be consistent" and thus that "we do not

construe the alleged misapplication of state law as violative of

substantive federal due process") (citations omitted); *see also*

*Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long

recognized that a mere error of state law is not a denial of due

process. . . . If the contrary were true, then every erroneous

decision by a state court on state law would come [to the federal

courts] as a federal constitutional question.") (quotation marks

and citation omitted).  While the Board's proceedings may not

have been executed with procedural perfection, the public

interest was very much at the fore of those proceedings.  Indeed,

given the Virgin Islands' prevailing interest in the supervision

of medical practitioners in the territory, what Williams depicts

as the Board's flawed governance is best left to oversight by the

local authorities.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will abstain from

*Williams v. Gov't of the Virgin Islands, et al.*
Civil No. 2005-97
Memorandum Opinion
Page 26

hearing this matter under the *Younger* doctrine and will dismiss

this case.[12]   An appropriate judgment follows.


                              S_____
                                   **CURTIS V. GÓMEZ**
                                    **Chief Judge**

---

     [12]   "[A] district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages . . . ." *Williams v. Hepting*, 844 F.2d 138, 144-45 (3d Cir. 1988).   Here, Williams seeks only equitable relief.   Therefore, dismissal with prejudice, rather than a stay, is appropriate. *See Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006) ("[W]hen a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits.") (citations omitted); *Lui v. Comm'n on Adult Entm't of Del.*, 369 F.3d 319, 327 (3d Cir. 2004) (holding that "a *Younger* abstention stay requires a dismissal with prejudice of the federal suit").